**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ELA Medical, Inc.,                                 Civil No. 06-3580 (JNE / SRN)

        Plaintiff,

                                        **REPORT AND RECOMMENDATION**

   v.

Arrhythmia Management Associates,
Inc., Deborah Whitney, and Biotronik,
Inc.,

        Defendants.

---

    Kerry L. Bundy, Faegre & Benson LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for Plaintiff.

    Andrew J. Voss, Littler Mendelson, P.C., 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402, for Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on the separate Motions to Dismiss, Transfer or Stay brought by Defendants Arrhythmia Management Associates and Deborah Whitney (Doc. Nos. 9 & 13 (amended motion)), and Defendant Biotroniks (Doc. No. 3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that both motions be denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

    In 1998 Plaintiff ELA Medical, Inc. (ELA) hired Defendant Deborah Whitney as a sales associate. In March or April of 2002, Whitney, through her professional corporation, Defendant Arrhythmia Management Associates (AMA), and ELA entered into an Independent Sales Representative Agreement ("Contract") governing Whitney's relationship with ELA as an

independent contractor selling ELA's products.  Whitney signed on behalf of AMA, as its

President and Secretary.  She also separately signed a personal guaranty of AMA's performance

of its obligations under the Contract.

The Contract contained, among other provisions, the following paragraph, entitled

"Applicable Law, Venue, and Jurisdiction":

> The law of the State of Minnesota shall govern this Agreement in all
> respects.  Any disputes arising out of or relating to this Agreement, including but
> not limited to any alleged breach of this Agreement, shall be venued in the state
> or federal courts in the State of Minnesota, and the parties hereby expressly
> consent to the exercise of personal jurisdiction over them by such courts.  If any
> term of this Agreement conflicts with applicable law, all other terms of this
> Agreement shall remain in effect and enforceable.  Further, if any provision is
> held to be over broad as written, such provisions shall be construed to narrow its
> application to the extent necessary to make the provisions enforceable according
> to applicable law, and shall be enforced as so amended.  Representative
> acknowledges the uncertainty of the law in this respect and expressly stipulates
> that this Agreement be given the construction which renders its provisions valid
> and enforceable to the maximum extent (not exceeding its express terms) possible
> under applicable law.  Any Court is also authorized to extend the duration of any
> restriction under Paragraph 7 for the period that any violation of Paragraph 7
> exists.

(Contract ¶ 13.)

The agreement also contained an express non-competition provision, generally providing

that Whitney would not–for a period of one year after the end of the agreement–"solicit or do

business with any actual or potential customers of the Company with whom [Whitney] . . . had

contact or about whom [Whitney] . . . had exposure to any Confidential Information, during the

term of this Agreement."  (Contract ¶ 7.01.)

At the time the parties entered the Contract, ELA was a Delaware corporation with its

principal place of business and headquarters in Minnesota.  It since moved its headquarters to

Colorado.  Whitney is a California resident.  AMA is a California corporation with its principal

place of business in that same state.  Biotronik is an Oregon corporation with its principal place

of business in that state.

In August 2006, Whitney notified ELA that she was terminating the Contract and entered a similar sales relationship with Defendant Biotronik, Inc.  ELA responded by informing Whitney that it rejected her termination of the Contract.

ELA then filed the present action against Whitney, AMA and Biotronik, generally alleging that Whitney and AMA breached ELA's Contract and that Biotronik tortiously interfered with the Contract.  (Complaint ¶¶ 44-68.)  ELA sought damages as well as injunctive relief.  (Complaint, p. 14.)

One week before ELA filed this action, however, Defendants had filed an action in California state court seeking declaratory relief and other remedies ("the California action"). (Complaint, Ex. D.)  ELA removed that action to federal court and then moved either to dismiss, to transfer it to Minnesota, or to stay it pending the outcome of this action.  The California action has since been remanded to state court but the court apparently has not yet ruled on ELA's motion.

In separate but largely parallel motions, Defendants Whitney and AMA and Defendant Biotronik now move to dismiss, transfer or stay this action, contending that dismissal is required under (1) Section 1406 because venue is improper under Section 1391, (2) the doctrine of *forum non conveniens*, and (3) <u>Colorado River</u> "abstention."  Alternatively, they seek to transfer this action pursuant to Section 1404(a) or Section 1406, or at least stay this action on the grounds that the California action was filed first.  Separately, Whitney and AMA–but not Biotronik–also seek dismissal for lack of personal jurisdiction.

## II.     DISCUSSION

Defendants present various arguments in an attempt to obtain various forms of relief, all of which however seek to evade the effect of Whitney and AMA having agreed to litigate this dispute in Minnesota, subject to the jurisdiction of this Court, and under Minnesota law.  Having determined that the various contractual clauses are valid and binding, this Court sees no basis to dismiss this action, transfer it elsewhere or stay it pending the resolution of any other action. Although Biotronik did not sign the Contract, it too is bound because it is closely related to the transaction.[1]

### A.     This Court Has Personal Jurisdiction Over All Of The Defendants

Defendants Whitney and AMA first argue that the case must be dismissed for lack of personal jurisdiction.  (Mem. at 10-19.)

### 1.     Whitney And AMA Consented To Personal Jurisdiction

It is well settled that a defendant may consent to personal jurisdiction.  Rykoff-Sexton, Inc. v. American Appraisal Assocs., Inc., 469 N.W.2d 88, 89-90 (Minn. 1991) ("One of the oldest tenets of personal jurisdiction is that a defendant may voluntarily submit to the jurisdiction of the court.").[2]  Here, Defendants Whitney and AMA have done so in advance of

---

[1]  This Court addresses the Defendants' arguments in a slightly different order from which they presented them.  Defendants, quite understandably, sequenced their arguments in terms of the declining order of their preferred outcomes–dismissal first (whether based on lack of personal jurisdiction, Section 1406, *forum non conveniens*, or Colorado River), then transfer (whether based on Section 1404 or Section 1406), then a stay (based on Colorado River "abstention" or this Court's inherent powers).  This Court will first address personal jurisdiction, then the various objections to venue.  Finally, this Court will address Colorado River "abstention" and the propriety of a stay.

[2]  In this diversity action, this Court applies Minnesota's law of personal jurisdiction. Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citing Rule 4(e)).

this litigation by agreeing in the Contract that "the parties hereby expressly consent to the exercise of personal jurisdiction over them by" the Minnesota state or federal courts.  (Contract ¶ 13.)  Such contractual clauses effectively waive any objection to personal jurisdiction, National Eq. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court."), and they are generally valid and enforceable, Burger King v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985).  The Eighth Circuit has upheld the application of such a clause in this precise context.  N.I.S. Corp. v. Swindle, 724 F.2d 707, 708-09 (8th Cir. 1984) (upholding choice of law, consent to jurisdiction and forum-selection clauses in employment contract prohibiting post-employment competition).  This Court sees no reason not to hold Whitney and AMA to their agreement here that the state and federal courts in Minnesota have jurisdiction over them.

Whitney and AMA nonetheless contend that ELA has failed to establish "minimum contacts" between them and Minnesota such that neither general nor specific personal jurisdiction exists here.  (Mem. at 10-19 (arguing that the contractual jurisdiction clause is simply "one 'contact'" within that analysis).)  As part of this argument, they further engage in a choice of law analysis with respect to a purported conflict between California and Minnesota law regarding the validity of noncompete agreements.  (Id. at 13-17.)

But in light of the contractual consent to the exercise of personal jurisdiction over them, this argument is misguided as no such minimum contacts analysis is necessary.  "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause."  Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001).  Accord Rykoff-Sexton, Inc. v. American Appraisal Assocs., Inc., 469 N.W.2d 88, 90 (Minn. 1991) ("With consent, resort to the constitutional test for personal

jurisdiction is not required because the defendant obviously can 'reasonably anticipate being

haled into court' after consenting to jurisdiction.").  Simply put, a minimum contacts analysis is

necessary only where there is no traditional basis for exercising personal jurisdiction such as

presence or consent.  See Rykoff-Sexton, Inc., 469 N.W.2d at 91.  Consent is an independent

traditional basis for personal jurisdiction and thus precludes any need to engage in such an

analysis of a defendant's contacts with the forum.

        Defendants also apparently contend that the clause at issue is invalid because the contract

in which it is contained is unenforceable under either California or Minnesota law based on the

non-compete provisions.  (See Mem. at 13.)  Defendants claim that a choice of law analysis is

necessitated because while "California law explicitly prohibits restraining a party from engaging

in a profession or business unless necessary to protect trade secrets," Minnesota law, while

disfavoring non-compete agreements, will enforce them under certain circumstances.  (Mem. at

13-14.)

        Defendants' choice-of-law argument is similarly misguided and unnecessary.  Whatever

difference between California and Minnesota law might exist with respect to the non-compete

clause, any such dispute is irrelevant here.  First, the issue is whether this court has personal

jurisdiction and where, as here, a federal court's subject matter jurisdiction is based on diversity,

the court applies the personal jurisdictional law of the state in which it sits.  See In re Nine Mile

Limited, 692 F.2d 56, 59 (8th Cir. 1982).[3]  Here, Defendants agreed to be subject to the

---

        [3]  Defendants cite DCS Sanitation Management, Inc. v. Castillo, 435 F.3d 892 (8th Cir.
2006), for the proposition that a federal court sitting in diversity applies the conflict of law rules
for the state in which it sits.  (Mem. at 13.)  This recitation of the rule of Klaxon Co. v. Stentor
Elec. Mfg. Co., 313 U.S. 487 (1941), is accurate enough with respect to the substantive law to be
applied, but misplaced here in the context of personal jurisdiction.  Indeed, DCS Sanitation did
not concern personal jurisdiction, but rather only the issue of which state's law regarding non-
compete agreements applied.  435 F.3d at 895-97.  Moreover, a federal court in a diversity action

jurisdiction of Minnesota courts to resolve disputes such as this.  (Contract ¶ 13.)  Second,

Defendants–by purporting to find and then resolve a conflict between Minnesota and California

law of non-compete provisions–take an errant route to argue this issue.  Even if California law

somehow applied with respect to the non-compete provision–and it is far from clear that it would

in light of the separate contractual clause providing that Minnesota law governs this dispute–the

alleged invalidity of the non-compete clause under California law would not invalidate the entire

contract so as to negate the jurisdictional consent clause.  Indeed, the parties agreed that "[i]n the

event that any provision of this Agreement is unenforceable under applicable law, that shall not

affect the validity [or] enforceability of the remaining provisions."  (Contract ¶ 16.)

### 2.    Biotronik Does Not Challenge Personal Jurisdiction

Biotronik separately argues that unlike the other defendants it did not sign the Contract

containing the choice of forum and jurisdiction clauses.  (Mem. at 2, 14; Reply Mem. at 5-8.)

But Biotronik does not expressly raise a personal jurisdiction objection based on its status as a

non-signatory.[4]  Moreover, even after Plaintiff expressly pointed out that "Biotronik does not

---

must apply an otherwise applicable federal rule, unless it exceeds the Rules Enabling Act or
constitutional limits.  Hanna v. Plumer, 380 U.S. 460, 471-72 (1965) (addressing application of
Rule 4 in diversity suits).  Rule 4 expressly directs federal courts to apply the "law of the state in
which the district court is located."  Fed. R. Civ. P. 4(e)(1), 4(k)(1)(A).  Even assuming a federal
court were to then apply the state's conflicts law, Minnesota courts still apply their own law of
personal jurisdiction.  See Bloom v. American Express Co., 23 N.W.2d 570, 575 (Minn. 1946);
Manson v. Bosworth Inc., 623 N.W.2d 610, 612-13 (Minn. App. 1998).  Finally, even if there
somehow were a basis to engage in a choice of law, here the parties also agreed that "[t]he law of
the State of Minnesota shall govern this Agreement in all respects."  In short, contrary to
Defendants' contention, a federal court in a diversity action applies the personal jurisdiction law
of the state in which it sits, but without then engaging in any analysis under that state's choice of
law methodology (or if engaging in such an analysis, it applies forum law as procedural).

[4] This appears to be no oversight, as the same attorney who represents all three
Defendants prepared both supporting memoranda, which are essentially parallel–except for this
one issue.

7

challenge the ability of the Court to exercise jurisdiction over it" (Mem. at 9 n.2), Biotronik did

not clarify in its Reply that its non-signatory argument also extended to the issue of personal

jurisdiction.[5]  Thus there is no need for this Court to address the issue of personal jurisdiction

over Biotronik.

**B.     There Is No Basis To Dismiss Under Section 1406, Which Only Applies Where Venue Has Been Laid In The Wrong District**

Whitney and AMA next contend that the action should be dismissed under Section 1406

for improper venue.  (Mem. at 20-22.)  Biotronik seeks the same relief.  (Mem. at 13-17.)  Where

a plaintiff files an action in a district where proper venue is lacking, the district court "shall

dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could

have been brought."  28 U.S.C. § 1406(a).[6]

---

[5]  This is perhaps not surprising in that although Defendant Biotronik, Inc. is an Oregon corporation, it is responsible for selling its German corporate parent's products throughout the United States.  Moreover, another corporate affiliate–Biotronik Vascular Inc.–is located here in Minnesota and registered with the Minnesota Secretary of State as a domestic corporation.  (The Court takes judicial notice of information provided by the various Biotronik entities on their own websites–www.biotronik.de and www.biotronikusa.com.)  While the non-party affiliate's contacts with Minnesota might not be imputable to Biotronik, Biotronik presumably engages in regular business with Biotronik Vascular and thus would have the minimum contacts with Minnesota.  But again, this Court need not resolve this question as Biotronik does not contest personal jurisdiction.

[6]  In this diversity action, the parties dispute whether state or federal law governs many of the issues raised in these motions.  For example, Whitney and AMA argue that the Eighth Circuit "has not yet decided whether state or federal law controls in determining the enforceability of a forum selection clause."  (Mem. at 13.)  But there is no "motion expressly designed for forum selection clause enforcement."  Steward v. Up North Plastics, Inc., 177 F. Supp. 2d 953, 957 (D. Minn. 2001) (internal quotation omitted).  Here (and presumably in almost all cases), the validity of such clauses arises in the context of issues governed by  federal statutes–mainly 28 U.S.C. §§ 1404 & 1406–and "the first question for consideration" is "whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue . . . . [W]e hold that it does."  Stewart Organ, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  Thus the resolution of such issues is governed by federal law.  Id. at 26 n.3 (noting its "conclusion that federal law governs transfer of this [diversity] case"); id. at 27-28 (ruling that "a district court sitting in diversity must apply a federal statue that controls the issue before the court and that represents a

**1.     Because Whitney And AMA Agreed To Resolve This Dispute In Minnesota, Venue Here Is Proper**

Defendants Whitney and AMA again try to minimize, if not entirely sidestep, the significance of the various contractual provisions pertaining to jurisdiction, venue and applicable law. Here, in addition to expressly consenting "to the exercise of personal jurisdiction over them by [the Minnesota] courts," the parties also agreed that "[t]he law of the State of Minnesota shall govern" and that all disputes "<u>shall</u> be venued in the state or federal courts in the State of Minnesota." (Contract ¶ 13 (emphasis added).)[7]

---

valid exercise of Congress' constitutional powers" and thus "federal law, specifically 28 U.S.C. § 1404(a), governs the parties' venue dispute"); <u>see</u> 14D Wright, et al., <u>Federal Practice and Procedure</u> § 3803.1, at pp. 73-75 (3d ed. 2007) (stating that in <u>Stewart</u>, "an underappreciated decision," the Supreme Court squarely faced the question . . . whether the state's policy towards honoring forum selection clauses controlled"). Similarly, whether a federal court sitting in diversity should dismiss based on *forum non conveniens*, although an issue not governed by federal statute, is a question of federal law. <u>Rivendell Forest Products, Ltd.</u>, 2 F.3d 990, 992 (10th Cir. 1993) (applying majority rule); <u>Sibaja v. Dow Chemical Co.</u>, 757 F.2d 1215, 1219 (11th Cir. 1985).

[7] Despite the mandatory language of this clause, Whitney and AMA nevertheless contend that it is permissive. (Mem. at 19.) This Court disagrees. Defendants' argument is based on the presence of <u>other</u> provisions that purport to authorize "any court" to exercise certain powers. (Contract ¶¶ 9, 13.) The case on which Defendants rely, however, involves contractual language lacking the clear mandatory choice of venue agreed on here–that all actions "shall" be filed in Minnesota–not the presence of additional clauses that purportedly negate that clear language. <u>Dunne v. Libbra</u>, 330 F.3d 1062 (8th Cir. 2003) (contrasting permissive forum-selection clause with mandatory choice-of-law clause). Here, Paragraph 9, which provides that "any court of competent jurisdiction may grant equitable relief . . . to specifically enforce the provisions of this Agreement," can plausibly be read in the context of the general venue clause simply to acknowledge that any <u>Minnesota</u> state or federal court that has the judicial power to grant equitable relief may do so here. Even if read literally and in isolation to mean <u>any</u> state or federal court in the country, it simply purports to authorize certain judicial remedial powers, a matter that would appear to exceed the litigants' authority. Similarly, Paragraph 13, which provides that "[a]ny Court is also authorized to extend the duration of any restriction under Paragraph 7 for the period than any violation of Paragraph 7 exists"–the same paragraph that also contains the general choice-of-venue clause–is best read in context to mean that any <u>Minnesota</u> state or federal court can exercise such powers. But even if read in isolation to mean literally "any court," the application of this clause is nevertheless limited to its terms–that is, extending the duration of the restrictions of Paragraph 7, a form of relief or interpretation not at

Defendants nonetheless argue, however, that dismissal is required under Section 1406(a) because venue in Minnesota is not proper under Section 1391(a).  But where, as here, Defendants have contractually agreed to a particular venue, Section 1391 is irrelevant.  Venue, like personal jurisdiction, are both "personal privileges of the defendant . . . and both may be waived by the parties."  <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 180 (1979).  As the Supreme Court clarified long ago, "[b]eing a privilege, it may be lost."  <u>Neirbo Co. v. Bethlehem Shipbuilding Corp.</u>, 308 U.S. 165, 168 (1939) (noting that it is irrelevant whether such a "surrender of a personal immunity" be viewed "negatively as a waiver or positively as a consent to be sued").  In short, by agreeing to resolve all disputes in Minnesota, Defendants voluntarily relinquished whatever rights or privilege Section 1391 would have otherwise accorded them.  <u>Dominium Austin Partners, L.L.C. v. Emerson</u>, 248 F.3d 720, 727 n.5 (8th Cir. 2001) (noting that "a forum selection clause may be viewed as a waiver of a defendant's right to object to venue").[8]

Contractual agreements on the proper venue in which to file actions regarding disputes arising out of breach of the contract are presumptively valid and enforceable.  <u>Servewell</u>

---

issue here.  Accordingly, these additional clauses do not undermine or outweigh the clear mandatory edict of the parties' general contractual choice of venue.

[8] Defendants rely on <u>Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.</u>, 906 F.2d 45 (1st Cir. 1990), and <u>Terra Int'l, Inc. v. Mississippi Chemical Corp.</u>, 119 F.3d 688 (8th Cir. 1997), to support their argument that a choice-of-venue clause "is insufficient to establish proper venue."  (Mem. at 20-21.)  But those cases simply hold that where venue is proper, a choice-of-venue clause does not preclude the transfer analysis under Section 1404 or the doctrine of <i>forum non conveniens</i>–that is, the question whether, even though the original venue is proper, a different proper venue is the more convenient.  <u>Terra Int'l</u>, 119 F.3d at 691 (addressing transfer under Section 1404(a)); <u>Royal Bed & Spring</u>, 906 F.2d at 48 (noting that <i>forum non conveniens</i> "<u>presupposes</u> at least two forums in which the defendant is amenable to process").  They do not address the antecedent question of whether the original venue is proper in the first instance–more specifically, whether the choice-of-venue provision establishes a proper venue in Minnesota independent of Section 1391.  This Court will address the separate issue of whether the action should nonetheless be transferred to a different proper venue in Sections II.C and D.

Plumbing, LLC, v. Federal Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) (quoting M.B.

Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, 752 (8th Cir. 1999) (stating rule of

validity unless unreasonable or unjust under the circumstances of the particular case).  "Where,

as here, the forum selection clause is the fruit of an arm's length negotiation, the party

challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain."  Id.

(internal quotation omitted).  Here, an agreement requiring the litigation of disputes such as this

in Minnesota is not unreasonable or unjust.[9]  Mere inconvenience does not suffice to invalidate

the agreement.  Id. at 790.  In addition, Defendants cannot meet their burden of showing that

litigating here would "be so gravely difficult and inconvenient that [they] will for all practical

purposes be deprived of [their] day in court."  Id. (internal quotation omitted).  Finally, the fact

that ELA moved its headquarters from Minnesota to another state after the Contract was entered

is of no moment.

Minnesota is thus at least a proper venue.  Accordingly, Section 1406–which assumes

that the original forum is "wrong"–simply does not apply.  See Stewart Organization, Inc. v.

Ricoh, 487 U.S. 22, 28 n.8 (1988); Steward v. Up North Plastics, Inc., 177 F. Supp. 2d 953, 957

(D. Minn. 2001) (noting numerous decisions "that 1406(a) is not an appropriate vehicle for

enforcing a forum selection clause when venue in the original forum is otherwise statutorily

proper").  Because venue in Minnesota is not "wrong," Section 1406 affords no basis to dismiss.

---

[9]  The Court rejects the suggestion that Whitney was coerced into signing the agreement or otherwise subject to practices that would justify not enforcing the agreement.  The record discloses no evidence of such coercion and it appears that Whitney is a sufficiently sophisticated businessperson to be held to her contractual agreements.  Even assuming the clause was not actually negotiated, it is still valid.  M.B. Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, 753 (8th Cir. 1999).

## 2.     Biotronik Is Sufficiently "Closely Related" To The Dispute To Be Bound By The Forum Selection Clause

The fact that Biotronik did not itself sign the agreement containing these provisions does not necessarily render irrelevant the choice-of-forum clause agreed upon by its co-defendants. Although, as Biotronik contends, contracts generally bind only the signatories, the courts recognize certain exceptions to this rule.  Where a contract contains a choice-of-forum or consent-to-jurisdiction clause, courts have extended the reach of such contractual obligations to others besides the actual signatories.  E.g. Lipcon v. Underwriters At Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998); Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993).  Under such circumstances, a non-signatory is nevertheless bound by the agreement where the non-signatory is "closely related" to the dispute such that it is foreseeable that it will be bound. Marano Enterps. of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 757-58 (8th Cir. 2001) (quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)).[10]

Here, Biotronik, the non-party to the Contract, is not just the new employer of the individual who agreed to venue in Minnesota and the exercise of personal jurisdiction over her by the Minnesota courts in the Contract with her former employer.[11]  It appears that Biotronik

---

[10]  Contrary to Defendants' argument (Reply Mem. at 5), third-party beneficiary status is not required for a non-signatory to be bound by another party's forum selection clause.  Hugel, 999 F.2d at 209 n.7 (expressly rejecting this purported limitation).  Defendants argue that "the Eighth Circuit has never deviated from [the] rule that some form of third-party beneficiary status is required to bind a non-signatory."  (Reply Mem. at 5.)  Although the Eighth Circuit apparently has not addressed this precise aspect of the rule in the context of forum-selection clauses, its citation of Hugel suggests that it would follow the Seventh Circuit's law on this point too. Marano, 254 F.3d at 757-58.  Other courts, including the Eleventh Circuit, agree that the power to bind non-signatories to forum-selection clauses is not limited by third party beneficiary principles.  Lipcon v. Underwriters At Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998).

[11]  The Court is not suggesting that Biotronik is bound by ELA's contract with Whitney simply because Biotronik somehow stepped into ELA's shoes when it replaced ELA as Whitney's employer.

actively sought the employ of Whitney knowing that she was then employed by ELA under the Contract containing the clauses at issue.[12]  All three defendants thus seem to share a common interest in this action–that is, facilitating the immediate employment of Whitney as a sales representative for Biotronik unfettered by any restrictions in the Contract.  Cf. Employers Ins. Co. of Wausau v. Equitas Holdings Ltd., 451 F. Supp. 2d 1012, 1024 (W.D. Wis. 2006) (characterizing cases "applying the 'closely related' test" as largely suits involving parties "bound by a clearly common interest").

Furthermore, Biotronik is also one of the three plaintiffs (along with Whitney and AMA) that filed suit against ELA in the California action.  In their Complaint in that action, they allege they knew as of August 25, 2006, that ELA "threatened to seek 'legal remedies' and 'immediate injunctive relief' if" Whitney and AMA breached the Contract.  (Complaint ¶ 5.)  Biotronik clearly was aware of the Contract for at least some time before filing the California action.  (See id. ¶ 19 (referencing Contract and attachment of copy of it to Complaint).)  This does not appear to be a situation where Whitney herself terminated the Contract with ELA and then–and only then–became aware of a new sales opportunity with Biotronik.  In fact, as ELA points out, Biotronik actually gave ELA notice of Whitney's termination of the Contract.  (Mem. at 5 (citing Pacek Declaration ¶ 10).)

Perhaps most importantly, Biotronik (along with Whitney and AMA) expressly sought "a judicial declaration of ELA's, AMA's, Ms. Whitney's and Biotronik's respective rights and duties under the Agreement."  (Id. ¶ 38 (emphasis added).)  Having sought such a declaration,

---

[12]  This Court is not pre-judging the merits of ELA's claim that Biotronik tortiously interfered with ELA's contract with Whitney, but rather is simply recognizing that Biotronik must have known of that contract at least some time before it filed suit along with Whitney and AMA seeking a declaration of their rights under that agreement.

Biotronik cannot now claim that the resulting litigation it expected ELA to file for breach of that contract would not be subject to its provision mandating a Minnesota forum.  See Hy Cite Corp. v. Advanced Marketing Int'l, Inc., 2006 WL 3377861, *4-5 (W.D. Wis. April 10, 2006) (holding that new employer of sales representatives who had signed agreement with their former employer was bound by forum selection clause in that agreement even though new employer did not sign that contract).  Cf. Marano Enterprs., 254 F.3d at 757-58 (non-signatory nevertheless bound after joining with other plaintiffs who signed contracts containing forum-selection clauses).[13]

Because Biotronik is bound by the Contract, its reliance on Guidant Sales Corp. v. Niebur, 2002 WL 205575 (D. Minn. 2002), is misplaced.  There, the court addressed a motion to dismiss or transfer brought by two separate sales representatives, Niebur and Sawyer.  Id. at *1-2.  While the contract Niebur signed contained only a choice of law provision, the separate contract that Sawyer signed contained not only a choice-of-law provision, but also a clause under which he consented to personal jurisdiction and agreed to an exclusive forum.  Id.[14]  Because there was no relationship between the two sales representatives such that Niebur could be bound by the clause in Sawyer's contract, the court properly granted Niebur's motion to transfer while

---

[13]   Defendants argue that Hy Cite is inconsistent with the majority rule or at least with Eighth Circuit law.  (Reply Mem. at 7.)  But the court in Hy Cite followed the "closely related" rule of Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993), the same authority the Eighth Circuit relied on in Marano Enterprs., 254 F.3d at 757-58.  In any event, this Court does not rely on Hy Cite as controlling authority, but rather only as analogous persuasive authority, which furthermore is consistent with what appears to be the majority rule of law as stated in Marano and Hugel.

[14]   Defendants' reliance on Medtronic, Inc. v. Camp, 2002 WL 539073 (D. Minn. April 1, 2002), is likewise misplaced because there the employment agreements did not contain a forum-selection clause or even a choice of law clause.  Id. at *3 (finding Niebur persuasive and transferring case under Section 1406 because Minnesota was not even a proper venue).

denying Sawyer's motion.  Here, in contrast, Biotronik is not another sales representative who signed a contract that lacked a forum-selection clause, but rather the new employer of Whitney and a co-plaintiff in the California action seeking a declaration of its rights under the Contract. Accordingly, Biotronik is sufficiently closely related to the transaction so as to foresee being bound by the forum-selection clause in that Contract.[15]

## C.     A Transfer Is Not Warranted Here Under Section 1404 Or Section 1406

Barring dismissal under any of the asserted grounds, Defendants Whitney and AMA contend that this action should at least be transferred to California federal court under Sections 1404(a) and 1406.  (Mem. at 33-37.)  Biotronik joins in this alternative request.  (Mem. at 29-32.)

Section 1404 permits transfer to a district where the action "might have" been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice."  28 U.S.C. § 1404(a).  Similarly, Section 1406 permits transfer to a district where the action "could have" been brought "if it be in the interest of justice."  28 U.S.C. § 1406(a).[16]  But transfer under Section 1406 is not possible here because that provision only comes into play if the original

---

[15]   The remaining published authorities on which Defendants rely are also distinguishable. In Naegele v. Albers, the plaintiff opposed a defendant's motion to dismiss for lack of personal jurisdiction by arguing that the defendant consented to jurisdiction simply because of an agreement plaintiff entered with the other defendants that contained a forum-selection clause.  355 F. Supp. 2d 129, 138 (D.D.C. 2005).  But as the court there ruled, the "plaintiff makes a bald assertion that the contract is enforceable against a third party" and his "arguments are grounded on 'bare allegations or  conclusory statements.'" Id. at 139.  Here, in contrast, Plaintiff has shown that Biotronik is "closely related" so as to foresee being bound.  In Intergen N.V. v. Grina, the party seeking to hold a nonsignatory to the contractual obligation to arbitrate argued only third-party beneficiary status and did not assert the "closely related" test of Marano and Hugel.  344 F.3d 134, 146-47 (1st Cir. 2003).

[16]   Defendants apparently request a transfer or a stay under Sections 1404(a) or 1406(a). But neither of those sections authorizes a stay, only (on a proper showing) a transfer.

district where the action was filed was not a proper venue.  <u>Id.</u>  This Court has already ruled,

however, that Minnesota is a proper venue based on the contractual choice-of-venue provision.

<u>See supra</u> Section II.B.

At the outset, this Court notes that although the California action, which was originally

filed in California state court, was removed by ELA to federal court, that court apparently has

remanded the action back to state court.  Thus, because Section 1404 authorizes transfers only

within the unified federal system, and not from federal court to state court, transfer would not

necessarily achieve the benefits of consolidation with the California action which has now

returned to state court.

### 1.      Other Relevant Factors Do Not Outweigh The Contractual Choice of Forum and Plaintiff's Election Consistent With That Contract

Here, the Court rejects the argument that transfer under Section 1404(a) is appropriate.

Transfer under Section 1404(a) "should not be freely granted."  <u>In re Nine Mile Ltd.</u>, 692 F.2d

56, 61 (8th Cir. 1982) (affirming transfer based on the "unique posture" of case), <u>abrogation on</u>

<u>other grounds recognized by</u>, <u>Mo. Housing Dev. Comm'n v Brice</u>, 919 F.2d 1306, 1311 (8th Cir.

1990).  In addition, the forum-selection clause is again central.  "[A] forum selection clause is 'a

<u>significant factor</u> that figures centrally in the district court's calculus' in a motion to transfer, and

section 1404(a) accords the district court much discretion in deciding such motions."  <u>Terra Int'l,</u>

<u>Inc. v. Mississippi Chemical Corp.</u>, 119 F.3d 688, 697 (8th Cir. 1997) (emphasis added).

Moreover, "federal courts give considerable deference to a plaintiff's choice of forum and thus

the party seeking a transfer under section 1404(a) typically bears the burden of proving that a

transfer is warranted."  <u>Id.</u> at 695.  Here, because Plaintiff brought this action where the contract

provided it should be brought, the Plaintiff's choice of venue is consistent with the mandatory

venue provision.  Thus, Defendants face a particularly heavy burden in arguing that another

venue is clearly more convenient.

The other relevant factors do not outweigh the combined strength of the contractual choice of venue and deference to the plaintiff's decision to file suit here.  Although each case is decided on its own facts and circumstances, there are "three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, 119 F.3d at 691.

The convenience of witnesses is clearly relevant, but there is no showing here that the aggregate balance of witness convenience tips decidedly in favor of some other forum.  Cf. Terra Int'l, 119 F.3d at 696-97 (noting convenience factors but stating that "we cannot say that they so overwhelmingly favor Iowa as to outweigh the significance of the agreed-upon forum selection clause").  With respect to the convenience of the parties, the Court notes that ELA filed suit in Minnesota even though it is no longer headquartered here.  Insofar as Plaintiff is thus voluntarily incurring some inconvenience in order to abide by its agreement, Defendants too should uphold their contractual obligations.  The interests of justice likewise do not compel transfer here as there is no showing that the courts in Minnesota are overwhelmed or face any problematic choice of law issues.  Terra Int'l, 119 F.3d at 696 (noting several "interest of justice" factors).

Insofar as Defendants simply argue that Minnesota is an inconvenient forum for them, such an argument mistakes the appropriate transfer analysis.  Transfers are not proper under Section 1404 if they merely shift the inconvenience from one party to another.  Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc., 114 F. Supp. 2d 856, 862 (D. Minn. 2000).  Moreover, it would appear that unless all of the parties, all of the witnesses and all of the evidence are located in a single district, litigation in any particular district is necessarily somewhat inconvenient for someone.  Thus, transfer under Section 1404 is not appropriate as the

17

proposed transferee forum is not clearly more convenient when considering the aggregate interests of all parties and non-party witnesses, and the interests of justice.  On balance, the Court finds it proper to defer to the Plaintiff's choice of forum consistent with its contractual agreement.

> **2.      Because The Action Against Whitney And AMA Is Best Resolved Here In Minnesota, There Is No Clearly More Convenient Forum For The Action Against Biotronik**

The Court already has found that Biotronik is bound by the forum-selection clause.  But even if it were not, in light of the Court's rejection of Whitney and AMA's transfer motion, the remaining question is whether the entire action should nevertheless be transferred to assuage Biotronik's alleged inconvenience.  Biotronik's argument is hampered by two realities: (1) although Biotronik–an Oregon corporation–claims litigating in Minnesota would be too inconvenient, it is far from clear that the forum it proposes–the Central District of California, headquartered in Los Angeles–would be clearly more convenient for it; and (2) Biotronik's claims of burden and inconvenience in litigating here ring somewhat hollow in light of the fact that it represents its German corporate parent throughout all of the United States and maintains a corporate affiliate, Biotronik Vascular, here in Minnesota.

In addition, putting aside the question of whether Biotronik is held to its co-defendants' contractual agreement on venue, the fact that venue is proper here with respect to those defendants almost necessarily compels the conclusion that all of the defendants litigate the action here.  There simply is no sensible way–once it is concluded that Whitney and AMA must litigate here–to hold that the most convenient forum for the action against Biotronik lies elsewhere.

**D.    There Is No Basis To Dismiss Under The Doctrine Of *Forum Non Conveniens***

Whitney and AMA also contend that the action should be dismissed under the doctrine of *forum non conveniens*.  (Mem. at 22-28.)  Biotronik makes a similar argument.  (Mem. at 17-24.)  Under that common law doctrine, even though venue is proper in the district in which the action was filed, the court may in its discretion decline jurisdiction in favor of an adequate alternative forum based on the private interests of the litigants as well as the public interests.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504-05 (1947).[17]

The Supreme Court has clarified that the doctrine is of restricted domestic applicability since the 1948 enactment of Section 1404.  American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994) (stating that as a consequence of the enactment of Section 1404, "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad").  Transfers from one federal district to another are now governed exclusively by Section 1404 (where venue was proper in the transferor district) and Section 1406 (where the transferor court lacked venue).

Insofar as Defendants contend that the more convenient forum is a state court (here, that of California), the doctrine might have some continuing applicability.  14D Wright et al., Federal Practice and Procedure § 3828, at p. 621-22 & n.9 (3d ed. 2007) (stating that doctrine now applies only "perhaps, under rare circumstances, [where the more convenient] forum is a state court" or abroad); Brice v. C.R. England, Inc., 278 F. Supp. 2d 487, 489-90 (E.D. Pa. 2003) (dismissing on basis of *forum non conveniens* where Ohio state court provided adequate and

---

[17]  Although some contend that the Supreme Court has not yet clearly ruled on whether state or federal law of  *forum non conveniens* governs in a diversity case, "it seems quite clear that state *forum non conveniens* principles ought not to be considered controlling."  14D Wright, et al., Federal Practice and Procedure § 3828.5, at pp. 734-35 (3d ed. 2007).

more convenient forum).  But see Wade v. Isisabvik College, 2005 WL 2340710, *4 (D. Alaska
Sept. 20, 2005) (applying American Dredging Co. v. Miller to reject *forum non conveniens*
where proposed more convenient forum was state court).[18]

In any event, this Court need not resolve this question.  Even assuming the propriety of
applying the doctrine where the proposed more convenient forum is a state court, this
Court–having already rejected a transfer under the less demanding standard of Section 1404,
Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981) ("District courts were given more
discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non
conveniens*.")–believes that dismissal in favor of another forum is not warranted here.

Defendants bear the "burden of persuasion in proving all elements necessary for the court
to dismiss a claim based on forum non conveniens."  Reid-Walen v. Hansen, 933 F.2d 1390,
1393 (8th Cir. 1991).  This court has broad discretion in ruling on such motions.  Id. at 1394.

Generally, this court must "balance the private interest factors, which affect the
convenience of the litigants, and the public interest factors, which affect the convenience of the
forum."  De Melo v. Lederle Labs., 801 F.2d 1058, 1062 (8th Cir. 1986).[19]  But a defendant's

---

[18]  But insofar as they seek a transfer from this federal district to that state court (see
Mem. at 28 n.10 (seeking "transfer" on *forum non conveniens* grounds), their reliance on the
doctrine of *forum non conveniens* is misplaced as that doctrine permits a court to dismiss an
action where another forum is clearly more convenient, but it does not authorize this court to
transfer the action to a state court, a procedure that would seem to be fraught with federalism
problems.  While a valid *forum non conveniens* argument presupposes that the other forum be
valid, the court in which the action was originally filed must leave it to the court in the
alternative forum to actually assume jurisdiction over the case after the original court would
dismiss.

[19]  Defendants' reliance on DeMelo for the result of that case–dismissing products
liability action in favor of more convenient Brazil forum–is misplaced because not only was
there no contractual choice of forum, the court recognized that the law of Brazil would apply to
the action, the "crux" of which "concerns the safety of drugs distributed in Brazil: it involves a
Brazilian woman who ingested a drug manufactured, distributed, and labelled in Brazil, pursuant

burden is substantial and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); Reid-Walen v. Hansen, 933 F.2d 1390, 1394-95 (8th Cir. 1991) (reversing dismissal and stating that "district court failed to give proper deference to the plaintiff's choice of forum"). "Although such choice is not to be given dispositive weight, jurisdiction should be declined only in 'exceptional circumstances.'" Reid-Walen, 933 F.2d at 1395. Cf. Coast-To-Coast Stores, Inc. v. Womack-Bowers, Inc., 594 F. Supp. 731, 733 (D. Minn. 1984) (comparing transfer under Section 1404 with dismissal under *forum non conveniens*, under which weight of plaintiff's choice of forum is "near controlling").

Here, Defendants' argument that California is clearly the more convenient forum is hampered by the parties' agreement that actions such as this be venued in Minnesota. Granted, the effect of the choice of venue clause is limited to only one of the factors, that is, the convenience of the parties. See 15 Wright et al., Federal Practice and Procedure § 3854.1, at p. 314 (3d ed. 2007) (noting, in context of Section 1404(a) transfer, that parties can agree on what is convenient for themselves, but lack the power to enter a contractual agreement with respect to the remaining factors, particularly the convenience of witnesses and the interests of justice).[20]

---

to a course of treatment prescribed by Brazilian physicians, purchased from a pharmacy in Brazil, which resulted in an injury and subsequent treatment in Brazil." Id. at 1060.

[20] In response to the choice of venue clause, Whitney and AMA mistakenly rely on Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45 (1st Cir. 1990), and Terra Int'l v. Mississippi Chemical Corp., 119 F.3d 688 (8th Cir. 1997), for the proposition that the "forum selection clause is this litigation's only connection to Minnesota." (Mem. at 26.) This argument fails to accord such clauses their proper role and weight as venue clauses are not simply one factor among many similar factors such as the convenience of witnesses. Rather, such clauses are largely determinative of the component of the analysis addressing the parties' interests. In any event, Defendant's reliance on Royal Bed & Spring is misplaced in that there the court granted the motion to dismiss in favor of the forum in which the parties had agreed to litigate–that is, the court enforced the parties' contractual choice of venue.

But even considering the other relevant factors, Defendants cannot meet their burden of showing that another venue is clearly more convenient (or clearly less inconvenient) than Minnesota.  The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility to view the premises (if relevant); and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Gulf Oil v. Bilbert, 330 U.S. 501, 508 (1947).

Here, factor (3) is irrelevant and there's been no persuasive showing with respect to factors (1) and (4).  With respect to factor (2), the location of essential non-party witnesses is a critical factor.  Coast-To-Coast Stores, Inc. v. Womack-Bowers, Inc., 594 F. Supp. 731, 734 (D. Minn. 1984) (addressing transfer under Section 1404).  But here, even if this factor weighed in favor of transfer, transfer is not necessarily compelled.  Cf. Schwan's Consumer Brands North America, Inc. v. Home Run Inn, Inc., 2006 WL 737084, *4-5 (D. Minn. Mar. 15, 2006) (finding that witness convenience weighed in favor of transfer but nevertheless denying motion where movants signed agreement specifying Minnesota venue and providing for application of Minnesota law).

With respect to Biotronik, the Court notes that any inconvenience to it in litigating in Minnesota is mitigated by the fact that it has a corporate affiliate in the Twin Cities.  Cf. Coast-To-Coast Stores, Inc., 594 F. Supp. at 733 (transferring action to Arkansas based in part on fact that plaintiff had a "divisional headquarters in the adjoining state of Missouri" and thus could not claim undue burden in litigating in Arkansas).

---

906 F.2d at 53 ("In this case, there is neither overreaching nor factors that would counsel against the application of the forum selected by the parties in their agreement.").

The public interest factors include (1) the administrative difficulties due to court congestion, (2) the forum's interest in having localized controversies decided at home, (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  Gulf Oil, 330 U.S. at 508-09.

Here, there is no evidence of record that the docket of one jurisdiction or another is so congested as to warrant the other deciding the case.  The contractual choice-of-law clause specifying the application of Minnesota law largely renders factor (4) irrelevant and tilts the application of factor (3) towards retention of the suit here.[21]  Factor (2) is not relevant as this action does not concern real property or otherwise implicate a truly "local" controversy.  Finally, there is no demonstrable undue burden on Minnesota jurors in light of the policy of this state that a non-resident plaintiff is free to bring its action in Minnesota as long as subject matter jurisdiction and personal jurisdiction are valid.  Schwartz v. Consolidated Freightways Corp. of Del., 221 N.W.2d 665, 669 (Minn. 1974) ("Suffice it to say that the courts of this state are open to those residents and nonresidents alike who properly invoke, within constitutional limitations, the jurisdiction of these courts.").

---

[21]  Defendants' reliance on Pony Computer, Inc. v. Equus Computer Systems of Missouri, 162 F.3d 991 (8th Cir. 1998), for the proposition that California law would apply here, is entirely misplaced.  There the Eighth Circuit, reviewing a judgment from the Eastern District of Missouri in a diversity action, properly applied the Second Restatement's theory of choice of law because that was the methodology adopted by the state courts of Missouri.  Id. at 995.  Minnesota uses a different approach–Professor Leflar's choice-influencing considerations.  Jepson v. General Cas. Co. of Wis., 513 N.W.2d 467, 470 (Minn. 1994).  Under this approach, Minnesota courts would likely defer to the parties' contractual agreement to apply Minnesota law.  Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 454 (Minn. App. 2001) (applying Minnesota law to former employer's action seeking enforcement of noncompete agreement that contained Minnesota choice-of-law provision).

In sum, Defendants have failed to meet their burden of showing that California is clearly the more convenient forum.

**E.     A Stay Or Dismissal Under <u>Colorado River</u> Is Not Warranted**

Finally, Whitney and AMA contend that the action should be dismissed or stayed  based on <u>Colorado River Water Conversation District v. United States</u>, 424 US. 800 (1976).  (Mem. at 29-32.)  Biotronik too contends <u>Colorado River</u> requires dismissal.  (Mem. at 24-29.)

This Court declines to dismiss or stay this action under the principles of <u>Colorado River</u>. The authority of a federal court to stay or dismiss an action out of deference to a parallel action in state court is discretionary and appropriate only in "exceptional circumstances."  <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 19 (1983).  The task of federal courts "is not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist "'exceptional' circumstances, the 'clearest of justifications,' that can suffice under <u>Colorado River</u> to justify the *surrender* of that jurisdiction."  <u>Id.</u> at 25 (emphases in original).

Here, there are no such exceptional circumstances or justifications warranting a dismissal or stay under <u>Colorado River</u>.  As the Supreme Court clarified, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."  <u>Colorado River</u>, 424 U.S. at 818.  "[W]hether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important facts as the apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  <u>Moses H. Cone Mem. Hosp.</u>, 460 U.S. at 16.

As summarized by the Eighth Circuit, the Supreme Court has identified six factors as

relevant to this issue: (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority–not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.  United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994).[22]

Here, none of the six–neither singly nor together–outweigh this Court's usual obligation to exercise its jurisdiction.  The first factor is not relevant as neither court has assumed jurisdiction over any res or property.  Nor is this federal forum clearly less convenient than the California state court forum.  There appears to be no real risk of piecemeal litigation because ELA–based on the various contractual agreements regarding jurisdiction, venue and governing law–has moved to dismiss, transfer or stay the California action and this Court does not anticipate that both courts would insist on resolving this action knowing the other is doing the same, particularly where the Contract provides for such litigation here in Minnesota.  Cf. Hy Cite

---

[22]  Defendants rely on United States Fidelity and Guaranty for the result in that case–upholding a stay in favor of a parallel state court action, but that case is easily distinguishable.  There the federal action was the one for declaratory relief and the Eighth Circuit recognized the rule that federal courts "are 'under no compulsion to exercise' their jurisdiction under the Declaratory Judgment Act."  Id. at 260 (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942)).  Moreover, the action "presented difficult questions of state law on a matter of great public interest, thus further justifying a stay of the federal court action in favor of the state action."  Id.  Similarly, their reliance on Darsie v. Avia Group Int'l, Inc., 36 F.3d 743 (8th Cir. 1994), is misplaced because there the state court "proceedings in two different states are already under way."  Id. at 745 (noting that in one, "state court has addressed motions, discovery has begun, and a trial date is set" while in the other the defendant had filed an answer and opposed a motion to compel arbitration).

<u>Corp. v. Advanced Marketing Int'l, Inc.</u>, 2006 WL 3377861, *5 (W.D. Wis. April 10, 2006)

("Enforcing the forum selection clause is the clearest way to avoid the multiple and conflicting

rulings plaintiffs fear will occur.").

Regarding the fourth factor, the "first-to-file" rule, if two or more courts have

jurisdiction, the court in which the action was not first filed should generally defer to the court

that first acquired jurisdiction.  <u>Northwest Airlines, Inc. v. American Airlines, Inc.</u>, 989 F.2d

1002, 1005 (8th Cir. 1993).  But two "red flags" counsel against applying this general rule here:

(1) where the plaintiff in the first-filed action was on notice that the defendant was considering

filing an action against that plaintiff; and (2) where the first-filed action seeks a declaratory

judgment rather than damages or equitable relief.  <u>Id.</u> at 1007.

The court notes that although the California action was filed first, it preceded this action

by only one week and likely is the product of a race to the courthouse.  The plaintiffs there

clearly had notice that ELA was considering suit against them.  Moreover, they seek a

declaratory judgment in the California action.  While there is some theoretical risk of the two

courts proceeding to inconsistent judgments, this Court notes that Plaintiff (the defendant in the

California action) has filed a motion to transfer that action to this court, a motion that is plausibly

based on the choice of forum and choice of law clauses in the governing contract.

With respect to the fifth factor, because this action has satisfied subject matter

jurisdiction based on diversity, there is no issue of federal rather than state law providing the rule

of decision on the merits.  Defendants contend that "California state law, not federal law,

controls" here.  (Mem. at 29.)  Although it is clear that state law applies, it is far from clear that

California state law rather than Minnesota state law governs given the parties' contractual

choice-of-law provision.  Finally, the sixth factor–the potential inadequacy of the state-court

proceeding to protect federal rights–is also not implicated here. There is no reason to believe

that a California state court could not adequately resolve this dispute. But none of this mandates

that this Court stay its hand in favor of the California court under the exceptional doctrine of

Colorado River.

      **F.**    **A Stay Is Not Appropriate**

Whitney and AMA's final alternative request for relief is that this Court stay this action

pending resolution of the California action. (Mem. at 36-39.) Biotronik makes the same

alternative argument. (Mem. at 31-32.)

This Court possesses the inherent power to stay actions in order "to control the

disposition of the cause on its docket with economy of time and effort for itself, for counsel, and

for litigants." Landis v. Amer. Co., 299 U.S. 248, 254 (1936). Whether to exercise this power is

within this Court's discretion. See id. at 254-55 (noting that decision to stay requires "the

exercise of judgment, which must weigh competing interests and maintain an even balance").

Here, for all of the reasons previously discussed with respect to Defendants' other

requests for similar forms of relief, the Court finds that a stay is not justified.

**III.**    **CONCLUSION**

Whitney and AMA agreed to litigate the present action in Minnesota under Minnesota

law and also contractually consented to the exercise of personal jurisdiction by Minnesota courts

over them. This Court thus has personal jurisdiction over them and Section 1406 does not apply

because Minnesota is at least a proper forum. Defendants cannot meet their difficult burden

under the doctrine of *forum non conveniens* of establishing a clearly more convenient forum.

Nor can they meet the somewhat less exacting burden of showing that a transfer would be

appropriate under Section 1404. Finally, there is no basis to dismiss or stay this action under

<u>Colorado River Water Conversation District v. United States</u>, 424 US. 800 (1976), or pursuant to this Court's inherent powers.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1.    Defendants Whitney and AMA's motion (and amended motion) to dismiss,

transfer or stay this action (Doc. Nos. 9 & 13) be DENIED; and

2.    Defendant Biotronik's motion to dismiss, transfer or stay this action (Doc. No. 3)

be DENIED.

Dated:  February 21, 2007

     s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by March 8, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.